**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>vs.<br><br>MARKARA MAN,<br><br>*Defendant,* | CASE NO.:1:18-CR-308<br><br>POSITION RE: SENTENCE<br><br>The Honorable T.S. Ellis, III |

## POSITION REGARDING SENTENCING

Defendant Markara Man, ("Mr. Man"), by and through his attorney of record Edward M. Robinson, hereby submits his position regarding sentencing.

## INTRODUCTION

Appearing before this Court is a 33-year old man who, in his own words, was "angry, biter (sic), depressed, tired, alone, indecisive, [and] isolated[]" at the time he sent the threatening emails to Chairman Pai. These threats were sent from Mr. Man's home three thousand miles from Mr. Pai's residence. They were sent by Mr. Man from his room where he had been holed up in a form of self-imposed isolation for a number of years prior to the date of the threats. They were sent by a harmless, mentally ill man, with no criminal history, who had not sought treatment for his profound depression. There is no evidence that Mr. Man had any intent to carry

out the threat to kill Mr. Pai's children.  Mr. Man, upon seeking help for his illness, realized the terrible mistake he had made.  When confronted by the federal agents he confessed and apologized immediately.  He, as confirmed by his extraordinary family, acknowledges, "[b]efore my arrest I was on my road to recovery, checked myself into a mental hospital, I was taking medicine.  It has helped me greatly and I am a different person.  I know I need the help and its (sic) what I want." (letters from family attached to presentence report, "PSR").

Mr. Man pled guilty to an information at the earliest opportunity.  The plea agreement on file with this Court allows for argument on two applications of the advisory guideline adjustments.  The application of the upward adjustment for conduct evidencing an intent to carry out the threats and the downward adjustment for acceptance of responsibility have a significant impact on Mr. Man's advisory guideline range.  With no adjustment for conduct evidencing an intent to carry out the threat and with the adjustment for acceptance of responsibility, Mr. Man's range, with a Criminal History Category of I, is 24-30 months.  With unfavorable applications his advisory range is 63-78 months.

As argued herein, there is insufficient evidence to support the six-level upward adjustment.  Mr. Man's case is "extraordinary" and therefore, he should receive the three-level downward adjustment for acceptance of responsibility despite his stipulation to the two-level adjustment for obstruction.  In any case, a sentence of additional incarceration is "greater than necessary" given Mr. Man's personal history and characteristics as evidenced by his deep and committed family support and positive response to his psychological and psychiatric treatment, as well as the nature and circumstances of this case.

\\

\\

**ADVISORY GUIDELINES**

Paragraphs 39-55 of the PSR, (Doc. 35-1), set forth the probation office's advisory guideline application. As set forth above and in the plea agreement on file with this Court, the parties agree to dispute the application of the six-level upward adjustment per U.S.S.G. §2A6.1(b)(1), conduct evidencing an intent to carry out the threat supporting the count of conviction and the three-level downward adjustment for acceptance of responsibility per U.S.S.G. §3E1.1(a) and (b). Objections to the probation office's application of these adjustments are addressed by the probation office in the **ADDENDUM TO THE PRESENTENCE REPORT**.

All Guidelines are now merely advisory. *Nelson v. United States*, 555 U.S. 350 (2009). The party seeking the application of the adjustment bears the burden of proof. There is insufficient evidence to support the application of the six-level upward adjustment for, "conduct evidencing an intent to carry out such threat…" U.S.S.G. §2A6.1(b)(1). In this case, "such threat" means Mr. Man's threat to kill Mr. Pai's children. Given the significant impact this adjustment has on Mr. Man's advisory range, it can be argued that a clear and convincing standard of proof may apply. Under either a preponderance or clear and convincing standard, the application fails.

In their addendum, the probation office recommends the application of this guideline based upon the fact that Mr. Man researched and found Mr. Pai's government and personal emails, found schools in the area, (none of which Mr. Pai's children attended), sent an email immediately before the threating emails that blamed the chairman for two teen's suicides and then sent an email with the chairman's family picture. The probation office also relied on the heightened security that was deployed at the schools listed by Mr. Man as well as speculation as

to what could have been on Mr. Man's phone, the content of which had been deleted by Mr. Man when the agents searched his home. None of this evidence supports the upward adjustment.

Case law requires that there be more than mere threats to support the upward adjustment. *United States v. Worrell*, 313 F.3d 867 (4th Cir. 2002), affirmed the upward adjustment where the defendant, who had issued threats to his girlfriend from prison, had a history of violent behavior towards her which he referenced in his threating letters. In affirming the application of the adjustment, the Fourth Circuit looked to U.S.S.G. §2A6.1, comment. Note. 2 which reads: "In determining whether subsection [](b)(1)…applies, the court shall consider both conduct that occurred prior to the offense and conduct that occurred during the offense." The defendant's violent behavior towards his girlfriend/victim before the threats and his reference to the violence in the threats, evidenced an intent to carry out the violent acts that were the threats. Here, Mr. Man threatened to kill Mr. Pai's children. The conduct relied on by the probation office is part and parcel of Mr. Man's motivation to make the threat, the teens suicides due to the chairman's position on net neutrality, and his making of the threat, the addresses, schools and picture. None of this proves a likelihood that Mr. Man would actually carry out the threat.

More recently in an unpublished opinion, the Fourth Circuit in *United States v. Spencer*, 628 Fed. Appx 867 (4th Cir. 2015) cited *Worrell* quoting *United States v. Gary*, 18 F.3d 1123, 1128 (4th Cir. 1994), that the application of this adjustment, "hinges on 'the defendant's intent *and the likelihood* that the defendant would carry out the threat.'"(emphasis added). Looking at the evidence in this case, especially who Mr. Man is, prior and subsequent to the threats, there is no "likelihood" that Mr. Man would or could carry out his threat. The increased security at the schools is understandable. It does not amount to any evidence of Mr. Man's intent or likelihood of carrying out the threat. The wiping of his phone, which was not used to send the threats,

supports the two-level upward adjustment per U.S.S.G. §3C1.1.  To use this conduct to support the §2A6.1 adjustment is to rely on speculation as opposed to proof and is impermissible double counting.

What is left is the evidence of the threats themselves.  In *Spencer*, the court held, "'[t]he majority of circuit courts require that a defendant engage in some form of overt act before sustaining a §2A6.1(b)(1) enhancement'. Citing *United States v. Goynes*, 175 F.3d 350, 353 (5th Cir. 1999) (citing *Gary*, among other authority). Accordingly, "threats alone" are insufficient to support an adjustment under §2A6.1(b)(1). *Id* at 355.'"   Expounding on this requirement for some type of overt act the Fifth Circuit in *Goynes* concluded that the, "writing of multiple threatening letters and the nature of their content alone are insufficient to justify [the six-level adjustment]."  The fact that the defendant signed a threating letter in blood, while "disturbing…is not in any way an actual step toward the realization of Goyne's threats." The court noted the lack of evidence of Goynes purchasing a weapon or ammunition, traveling to the victim's home or city, or engaging in any actual violence toward the victim.

Here, it is uncontested that Mr. Man sent the threats.  However, he has no prior connection to Mr. Pai.  He has no criminal history or any history of violence.  He has never possessed any weapons.  And he was sequestered in his room with no intent or ability to travel to the east coast.  The psychiatric and psychological evidence as well as the abundance of letters in support of Mr. Man from his family all support the conclusion that Mr. Man had no intent to carry out his threat.  This evidence also supports the conclusion that there is no likelihood that he would do so.  There is no evidence of any type of overt act to show a likelihood or intent that Mr. Man would carry out his threat.  The six-level adjustment should not apply.

The parties stipulated that Mr. Man, by swiping a phone clean when the federal agents came to his home to execute the search warrant and then lying about it, should receive the two-level upward adjustment for obstruction within the meaning of U.S.S.G. §3C1.1.  The issue in dispute at sentencing, reserved by the parties for argument, is the application of the acceptance of responsibility adjustment per U.S.S.G. §3E1.1 which requires that this Court determine that this is an "extraordinary case" such that both the obstruction and the acceptance adjustments apply. §3E1.1 comment. Note 4.

While Mr. Man wiped his phone, it was not the phone used to send the threats.  He did this three- and one-half months after the threats were sent.  The phone that was wiped is not the phone that Mr. Man used to send the threats.  This is the only conduct that supports the obstruction adjustment.

Importantly, Mr. Man confessed and apologized the day that the agents came to his door. He has consistently confessed his guilt and remorse.  He is now medicated and treated.  He is a different man than he was in December of 2017.

In *United States v. Hicks*, 948 F.2d 877, 885 (4th Cir. 1991), the Fourth Circuit upheld the application of the obstruction and acceptance guidelines where the defendant fled from arrest and attempted to dispose of the drugs prior to arrest as part of his flight.  The panel highlighted the defendant's persistent acceptance and cooperation, (not the § 5K1.1 type), post arrest to determine that the district court was correct in finding that the case was "extraordinary" within the meaning of the comment.

Other circuits have focused on the defendant's post arrest behavior in making the factual determination that the case is "extraordinary." In *United States v. Hopper*, 27 F.3d 378, 383 (9th Cir. 1994), the panel held, "…the relevant inquiry for determining if a case is an extraordinary

one within the meaning of Application Note 4 is whether the defendant's obstructive behavior is *not inconsistent* with the defendant's acceptance of responsibility." (emphasis in original). In *Hopper*, the defendant destroyed evidence and attempted to procure false alibis. When he accepted responsibility, he did not feign acceptance to perpetuate the obstruction. The court in *Hopper* noted that while the defendant's obstructive behavior occurred for a few days after his arrest, it was "not a methodical, continued effort to obstruct justice." *Hopper* at 383.

Citing Second and Seventh Circuit cases where the defendant told a victim not to cooperate with law enforcement and later confessed, and where a defendant counseled a co-participant to destroy evidence and later retracted that advice and confessed, the court in *Hopper* applied both adjustments, explaining, "[c]ases in which obstruction is not inconsistent with the crime, eventually accepts responsibility for the crime and abandons all attempts to obstruct justice…" are "extraordinary" for the purpose of applying both adjustments. *Hopper* at 383, citing *United States v. Booth* 996 F.2d 1395,1396-97 (2nd Cir. 1993) and *United States v. Lallemand*, 989 F.2d 936, 937-38 (7th Cir. 1993).

Again, Mr. Man's obstructive behavior was discreet and limited. He immediately accepted responsibility and pled guilty at the earliest time possible. His obstruction is not in any way inconsistent with his confession, apology and guilty plea. His case is therefore "extraordinary" and he should receive the three-level downward adjustment for acceptance of responsibility.

**18 U.S.C. §3553(a) ANALYSIS**

18 U.S.C. § 3553(a) requires a district court to impose a sentence that is "sufficient, but not greater than necessary," to achieve the goals of sentencing. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). Again, as set forth in *Nelson*, the guidelines are not to be presumed

reasonable. In this case, when viewed against the backdrop of the nature and circumstances of the offense, as well as Mr. Man's personal history and characteristics, a sentence of further incarceration is greater than necessary to protect the public from further crimes of Mr. Man and to provide individual and general deterrence. A sentence of further incarceration would not provide Mr. Man with the needed psychological/medical care in the most effective manner. 18 U.S.C. § 3553(a)(2)(B)(C)(D).

Section 3553(a)(2)(C) requires the judge to consider "the need for the sentence imposed … to protect the public from further crimes of the defendant." The purpose relates to both the defendant's risk of recidivism and the danger, if any, posed by the defendant. *See United States v. Rosales-Gonzales*, 801 F.3d 1177, 1184 (9th Cir. 2015).

Of all of the purposes of sentencing, the need to protect the public from further crimes of the defendant is one of the greatest practical concern and is the most capable of being measured. Probation or a below-Guideline sentence are encouraged in light of this purpose. *See, e.g., United States v. Hanson*, 561 F. Supp. 2d 1004, 1010 (E.D. Wis. 2008). Mr. Man has been evaluated by five mental health professionals. (PSR paras. 65-74). All of the evaluations support a conclusion that Mr. Man has a treatable condition. None of the evaluations conclude that he is a danger to anyone. Dr. Paul Lane, whose report is attached to the PSR, concludes that Mr. Man is a low risk for violence and that he presents a low risk of danger to the community. Per Dr. Lane's report, Mr. Man's risk of recidivism is extremely low. (PSR para. 71). Dr. Dean Inouye conducted a psychiatric evaluation of Mr. Man at the Alexandria Detention Center and concluded that Mr. Man showed no evidence of acute dangerousness. (PSR para. 73).

That a defendant poses a low risk of recidivism is a powerful mitigation argument. Recidivism arguments must be grounded on some factual record. *United States v. Chapman*, 694

F.3d 908, 913-14 (7th Cir. 2012) (rejecting arguments that defendant was at low risk of recidivism because there was insufficient personal or empirical evidence to support the argument). That record can be specific to the defendant, to the nature of the offense, or some general factor. For example, courts can consider the defendant's personal characteristics that lessen his or her likelihood of recidivism. *See United States v. Baird*, 580 F. Supp. 2d 889, 895 (D. Neb. 2008) (departing because of defendant's remorse and relying on medical examination indicating a low risk of recidivism).

As set forth in the mental health evaluations, particularly Drs. Lane and Inouye's reports, the empirical test results establish to a unanimous degree that Mr. Man is not a danger to anyone. The likelihood of him reoffending is negligible. His family support, particularly with respect to keeping him compliant with his treatment is compelling and broad based. There is no need for additional incarceration to promote this factor of sentencing.

Section 3553(a)(2)(B) requires the judge to consider "the need for the sentence imposed … to afford adequate deterrence to criminal conduct." Courts can consider not just specific deterrence as to the defendant but also the deterrent effect that the sentence would have on the general public. *United States v. Phinazee*, 515 G.3d 511 (6th Cir. 2008).

Courts must balance the general deterrent effect a sentence might have against a defendant who presents a very low risk of recidivism. Courts have struggled with the notion that a defendant who poses little risk of recidivism might be punished to prevent others from committing a crime.

> General deterrence uses a utilitarian calculation, subjecting defendants to longer periods of incarceration than retribution requires to 'send a message' to other potential offenders. Inherent in this general deterrence calculation is a tension

> between individual dignity and societal good, begging the question: Is it ethical to impose a greater-than necessary punishment upon an individual criminal defendant to protect society at large?

*United States v. Cole*, 622 F. Supp. 2d 632 (N.D. Ohio 2008).

Mr. Man is a different person now that he is being treated for a previously undiagnosed mental illness. All the evidence shows that had he been treated earlier he would not have committed this crime. As Dr. Lane notes in his report, at the time of the offense, Mr. Man was in a "crisis state" where he knew that he could get caught. His actions were a "cry for help." After the search warrant was executed in April of 2017, Mr. Man sought treatment for his mental illness. His response to treatment is remarkable. Given this, to further incarcerate Mr. Man to make a general example flies in the face of the individualized sentencing that is the mandate of §3553(a) and implicates the ethical question posed in *Cole*. Further incarceration of Mr. Man to promote general deterrence is greater than necessary.

Section 3553(a)(2)(D) mandates that the Court consider, "the need for the sentence imposed…to provide the defendant with the needed …medical care…in the most effective manner." Promotion of this treatment factor recognizes the rehabilitative function of § 3553(a)(2). *Tapia v. United States*, 564 U.S. 319, 325 (2011). Mr. Man voluntarily sought treatment for his undiagnosed mental illness prior to his arrest. While on pre-trial release in Los Angeles he was treated by Dr. Elahe Sagart. Dr. Sagart recommends "ongoing weekly psychotherapy sessions in order to learn coping skills to manage his mental health diagnosis as well as psychiatric evaluation and medication management services." Dr. Sagart identifies his family support and commitment as well as Mr. Man's willingness to participate in his mental health treatment as "resources supporting his wellbeing." (PSR para. 70). Dr Lane, "strongly

recommend[s] that Mr. Man continue with his psychiatric treatment [outpatient] and that he become involved with an intensive course of individual psychological treatment (evidence-based cognitive behavioral therapy)." (Lane report p.4-5).

This treatment in its "most effective manner" can be provided as a condition of supervised release as it was during Mr. Man's pre-trial release. The RDAP program is not tailored to Mr. Man's needs. Treatment in prison deprives him of the "resources supporting his wellbeing" identified by Dr. Sagart. Additional prison time is greater than necessary. It negates the rehabilitative factor of sentencing.

**CONCLUSION**

Mr. Man committed this crime as a call for help. Now that he is diagnosed and treated it is highly unlikely he will reoffend. His family loves him dearly and are fully committed to his treatment. A "just" penalty is one that protects the public and provides the most effective treatment for Mr. Man. Additional incarceration is greater than necessary as intensive supervised release with the recommended treatment is available and appropriate.

DATE: November 28, 2018

Respectfully Submitted

By: /s/ Evan M. Lisull

Evan M. Lisull (VBN 86194)
KALBIAN HAGERTY LLP
888 17th Street NW, Suite 1000
Washington, DC 20006
Tel: (202) 223-5600
Fax: (202) 223-6625
Email: elisull@kalbianhagerty.com

Edward M. Robinson
Law Office of Edward M. Robinson
21515 Hawthorne Boulevard, Suite 730
Torrance, CA 90503
Tel: (310) 316-9333
Fax: (310) 316-6442
E-mail: eroblaw@gmail.com
ATTORNEYS FOR DEFENDANT
MARKARA MAN

**CERTIFICATE OF SERVICE**

I hereby certify on this 28th day of November 2018 that I have electronically filed the foregoing using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Alexander P. Berrang
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3700
E-mail: Alexander.P.Berrang@usdoj.gov

/s/ Evan M. Lisull
Evan M. Lisull